22-1900 Eastern Missouri United States v. Zerak Brown The court also appreciates your willingness to accept the Criminal Justice Act appointment. Thank you, Your Honor. It is my pleasure to do that. May it please the court, counsel. My name is Jason Hine. I represent the appellant in this case, Mr. Zerak Brown. This is arguing that the district court erred in overruling and denying the motion for judgment of acquittal at the trial court. The real question here is kind of an interesting one, but it's whether or not the government submitted sufficient evidence to show that the alleged victim of assault, Officer Johnson, was engaged in the performance of his official duties at the time of the assault with him, and then at the time later on with the assault of two assisting officers. The important thing to keep in mind is that it's his official federal duties and not his official state duties. The reason I say that is because Officer Johnson was a Missouri Highway Patrol state trooper, also deputized as a task force officer with ATF, and this whole thing starts out state-based. He gets dispatched out to a small little town by Burnham to investigate a sexual assault. He speaks with some local police officers there who just hand this information, which the trial record shows is very little and minimal information, purely speculative, that they've heard that the suspect in this state sexual assault may possess some automatic weapons. Officer Johnson then interviews that suspect, who is not this appellant, doesn't mention anything about the automatic weapons, and then later goes to the suspect's home where he encounters the appellant and this assault occurs. Now, when looking at all of this, there's not a ton of analogous Eighth Circuit cases, so I went outside to other circuits, but most importantly, I would draw the court's attention to the Sixth Circuit. And why that is is because to make this engaged in the performance of official federal duties, Officer Johnson, his testimony is that he had three purposes of going to the home. The first one is to recover this victim, the state crime victim's belongings, to take a picture of a hatchet as evidence that may have been used in this state crime, and then his words exactly, that he had it in the back of his mind at the time that if he may possibly see something that qualifies as a machine gun, is the term he used, or an automatic weapon, then that would then further his investigation. To do that, he has to get into the home. So I draw to the court's attention the Boone case and use that as a factual scenario. In Boone, you have a judge coming into Cincinnati to hear oral arguments. She's on her way walking to the federal courthouse to do research for those oral arguments. At that time, she is assaulted. At that time, it's determined she's engaged in the performance of official federal duties. That is not the same thing that we have here. Here, it's not that Officer Johnson went to the home with the purpose of looking for automatic weapons. Officer Johnson specifically stated that if he may see something that qualifies as an automatic weapon, then at that time, he would then engage in investigation. And not only that, but his own testimony that in order to determine whether or not a weapon would be an automatic weapon, to know 100%, he would have to manipulate it. He would have to pick up the firearm and do a test on it. And he was also asked during the trial as to would he have normally done that when walking in someone's house and just walk over and pick something up. And he said, well, no, I would normally ask for their approval before I would do that. Counsel, you make good arguments and good points to the jury. Is this a jury question, though? And I understand you're saying just as a matter of law, it's not enough. Why isn't this something that the jury can handle? Because it's one of the elements, right, that they had to find. Correct. So we're really back down arguing facts. So help me get that line between enough to send to a jury for them to determine and us to pull that from them. Okay, to make sure I understand, I want to make sure of the distinction here. You're asking is what is it to where there's not even anything to where we should have stopped it from going to the jury as opposed to whether or not it's a question of law? I'm sorry. Well, I guess maybe I should be more direct in figuring out what your point is. Even under these facts as a matter of law, it just was not enough to say that he was acting in the course of his official federal duties, right? Correct. And that was something that the jury was tasked with finding. And I'm just, right, to determine. So I'm trying to figure out where that line is between just enough for the jury. You know, that's what we let juries do, figure that out. And what is it about this that… Completely understand. And it all comes down to there has to be some evidence for it to get to a jury. It's not just that, you know, I'm sure as all you honors know very well that you have to still present some evidence before a jury can even decide that. What I'm stating here is that there was no engagement in performance of official duties. As the Eighth Circuit Street case says, they kind of did an analysis of what that means. And they state that you look to whether or not the person was acting in the scope of what they are employed to do. So kind of more of your civil respondent superior language. And what I'm saying is here, Officer Johnson never did anything related to federal investigation. Everything he did was state-based. I will point to you that I don't think I would be in the same position saying this if he would have made a mention to the suspect. Hey, do you have automatic weapons in your home before we go there? I've heard of that. And he did something like that. Or he gets to the house and he makes approach with the appellant. He says, hey, before I go into this home, I heard your father has automatic weapons. Are there automatic weapons in this home? I would like to know that. Or before he does all of this, he contacts someone related to federal or tangential in the federal aspect saying this is what's going on. None of that happened. In his own testimony, when asked in direct by myself at the trial, or uncrossed by myself at the trial, as to what he could do with the information he received, his words were, I don't have anything to substantiate the speculative portion of it. I don't have anything to go on other than to keep that in my mind. That testimony matched with his partner on that evening, Sergeant Cohn, when she was also asked by myself relating to automatic firearms, what could you do with that information? Her words were, we were unable to pursue anything related to automatic firearms that night. So long-windedly, to answer your question, what I'm getting at is the specific terminology of engaged in performance of official duties, that requires him to take action. And his failure to act is what means there was no evidence presented for this to even get to a jury. Could the real problem be the jury instructions in terms of what they were asked to look for in terms of whether he was engaged in his official duties? As I would like to say yes, I would say I don't think so, mostly because the jury instructions were very specific. And then it does later go on to say that engaged in performance of official duties means doing what you are employed by the federal government to do. And that was kind of our whole argument at the trial, that he's not employed by the federal government to do this state investigation. But doesn't that kind of lead back to Judge Kelly's question about maybe this is a jury question and that's what they decided? And I understand that. I just respectfully disagree, and I think that it never should have gotten that far as there was not even any evidence to suggest that's what was going on. I see I have very little time, so I'll save the rest for rebuttal. Thank you, Your Honors. Very well. Thank you, Mr. Hyde. Good morning, Your Honors. Good morning. My name is Jack Kester on behalf of the government. May it please the Court. I'd like to begin by reiterating a point that was never in dispute. The defendant conceded, both before the district court and now on appeal, that as a deputized task force officer for the ATF, Officer Johnson did indeed qualify as a federal officer for purposes of Section 111.  The issue was whether Officer Johnson was performing any type of federal investigative function, whether he was performing any type of federal investigation at the time of the relevant events. Counsel, what concerns me about this is that because he testified, I'm always on duty, I'm always looking for firearms violations, that really all that's required here is his presence. So isn't it true that under the government's theory, any time an ATF task force member is merely present and there's forceful interference, that you have a federal crime under Section 111? I disagree with that, Your Honors. Where's the line? That is a good question. Here, the evidence before the jury, we acknowledge that when Officer Johnson was initially dispatched to that location, he was working in his state capacity to follow up on this sexual assault investigation. But a critical turning point was when he went to the Viburnum Police Department and he's told by two local police officers, this is a small community, they know Ira Brown, the appellant's father, and they're told, Officer Johnson is told, that house is going to be full of weapons and possibly machine guns. Now the testimony at trial was that that definitely impacted the investigation. That altered the course of the investigation. That's how I read your brief. You're relying on the speculative information that he was given about the possible presence of illegal weapons. What if he hadn't heard that speculation? Is it your position then that there would be no federal crime under Section 111? If there was no reference at all to weapons or anything of that nature, then I agree with that. Then he would have been acting in his state capacity. But he testified, I'm always on duty, I'm always looking for federal weapons violations. Right, but there has to be something in the record to show that he's conducting some sort of federal investigation, performing some sort of federal investigative function. And that's why when he received that information about the house being full of weapons and possibly machine guns, the testimony from Officer Johnson and also Sergeant Cone was very clear. Their initial plan was to go directly to the Brown residence. And they decided to hold back and they waited for Ira Brown to show up at the 911 dispatch center. They were told that Mr. Brown was going to be coming to work soon. Now ordinarily they were going to go straight to the house, they were going to help the victim collect her belongings, and they were going to try to take some photographs to corroborate the sexual assault investigation. But they deliberately held back and waited. And then when Mr. Ira Brown, the appellant's father, when he came to the dispatch center, it was at that point that Officer Johnson and Sergeant Cone went to the Brown residence. And another point, the first time Officer Johnson came into contact with Zurich Brown, there was a discussion on the porch and the testimony at trial was that Zurich Brown, he became agitated and he tried to go back inside the house. Officer Johnson then grabbed Zurich Brown's arm to prevent him from going inside. And Officer Johnson testified the reason he did that was because he was told the house would be full of weapons and possibly machine guns, and he did not want him to come back out armed with dangerous weapons. Why did Officer Johnson then call that speculative? It sort of seems like an odd combination of testimony. On the one hand, this information really was a driving force in how we proceeded with our investigation of the sexual assault. And yet on the stand he's saying, well, it's speculative, and his partner is saying there's nothing we could do about that. Sort of they almost seem to counter their own motivations or concerns. And I'm not sure why he chose to use that word while on the stand. I believe what he was getting at is that he had not seen any machine guns or anything like that at that point. But another point, Officer Johnson did make clear that he was going to follow up on any tip concerning machine guns. As a task force officer for the ATF, that was well within his responsibilities. In fact, his supervisor, resident agent in charge, John Taylor, he testified that he would fully expect any ATF special agent or any of the task force officers to follow up on any sort of information about machine guns because that is a core responsibility of the ATF. But everyone agrees that whether Officer Johnson was performing any type of a federal investigative function was a question of fact for the jury. And as you can tell from reviewing the record, this was a hotly contested issue at trial. This is what the whole trial was about. From the very beginning of opening statement, Mr. Hines told the jury that the case simply had no business being in federal court because the evidence would show that Officer Johnson was strictly working in his state capacity, that he was solely working in his state capacity. And you can review the transcript. I think the cross-examination was extensive. There are nearly a hundred pages in the transcript of cross-examination of Officer Johnson. It's all focused on his role as a task force officer and the nature of his investigation. But going back to your point, Judge Grass, there would be limits. But our view is that on this record, there was sufficient evidence for the jury to find that Officer Johnson was performing both a state investigation and he was also doing what he was supposed to be doing as an ATF task force officer. But at the end of the day, it is a jury question, and jury verdicts are not lightly overturned. This court's cases make it very clear that if there is any interpretation of the evidence that would support the jury's verdict, then the conviction must be upheld. And even if there's another interpretation of the evidence that would be consistent with innocence, that's not enough to overturn the verdict. Task force officer Johnson played a dual role in law enforcement, and his mandate as a task force officer was quite broad. It was to investigate any federal firearms violations. This covers the National Firearms Act of 1934 and the Gun Control Act of 1968. And as soon as he received that information about the house being full of weapons and the possibility of machine guns, he started to think about that in terms of his role as a task force officer with the ATF. And as I mentioned during the trial, the evidence was clear that it did have an impact on the way he handled the investigation. Wouldn't there always be a possibility of the presence of illegal weapons? There's always a possibility, but here it was communicated to Officer Johnson. And going back to the point you made before, we're not saying that any time the word gun is mentioned, that that's going to be enough to trigger a federal investigative function. I'm sure we could imagine a scenario where we would have to say, the evidence here didn't rise to the level to show that he was actually performing a legitimate federal function. I would be reluctant to try to define the outer limits or the outer boundaries in a hypothetical fashion here today. This is always going to be a very fact-intensive inquiry to be determined on a case-by-case basis. But to answer your question, I do believe it's not unlimited. We just believe that the evidence here was sufficient to uphold the verdict. So with that, if there are no additional questions, I would ask the court to affirm Mr. Brown's conviction, and I would rest on the written briefs. Thank you. Thank you, Mr. Kester. Mr. Heine, rebuttal? The multiple references to impact on the investigation doesn't just identify as acting in a federal capacity, the reason being the testimony was it impacted the investigation for safety reasons. It made them more cautious as to how they acted in regards to the state case. There was no testimony that said this information impacted our investigation where we're now kind of juggling two balls, and we're looking into the state case and we're also looking into this automatic machine gun case. It was very clear that they stated that it has to do with how they proceed for their own safety, which is based on the information of they believe he has weapons. And then finally, I would just end with the law states that you look at the specific time of the assault, so it's not the entirety of the entire investigation and then piecing it together. You look to what Officer Johnson was doing at the time he was assaulted and the time the other two officers were assaulted. And when looking at that, there was no active investigation taking place. I'm out of time, and I thank you. Court thanks you, both counsel, for your appearance and arguments. The case is submitted.